IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

LEWIS J. WHITE                                                          PETITIONER
ADC #129569

V.                                    NO. 5:10CV00357 DPM-JTR

RAY HOBBS, Director,                                          RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D.P. Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the

United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at a hearing before the Magistrate Judge.

3.    An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

    Clerk, United States District Court
    Eastern District of Arkansas
    600 West Capitol Avenue, Room A149
    Little Rock, AR 72201-3325

## I. INTRODUCTION

Pending before the Court is a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus and supporting Brief filed by Lewis J. White, an Arkansas Department of Correction inmate.  (Docket entries #2, #3.)  Respondent has filed a Response, to which Petitioner has filed a Reply.  (Docket entries #15, #16.)  Thus, the issues are

joined and ready for disposition.

In his *pro se* Petition and supporting papers, Petitioner challenges his 2003 conviction in Pulaski County Circuit Court for raping his daughter.  He alleges three specific constitutional errors:

> (1)  His trial counsel was constitutionally ineffective because he failed to obtain a continuance, provided false information to the trial court regarding the need for a continuance, failed to investigate Petitioner's case, failed to interrogate and call witnesses, failed to familiarize himself with statutes essential to the defense, failed to keep Petitioner informed about his case, and failed to introduce evidence essential to his defense (docket entries #2, at 3-4; #3, at 4-7, 17-18; #17, at 1-2);

> (2)  He was coerced into making a false confession in violation of his Fifth, Sixth and Fourteenth Amendment rights (docket entries #2, at 9-11; #3, at 14-16, 18-19, #17, at 4-6); and

> (3)  He is "actually innocent" based on "newly discovered evidence" establishing that he was convicted based on "perjured" testimony, in violation of his procedural and substantive due process rights (docket entries #2, at 6-7, 14-15; #3, at 7-14, 18; #17, at 1, 3-7).

Respondent contends that: (1) the first and second alleged constitutional errors are barred by the one-year statute of limitations applicable to federal habeas petitions; (2) the second and third alleged constitutional errors are procedurally defaulted because Petitioner failed to properly present them to the state courts; and (3) the third alleged constitutional error does not, as a matter of law, entitle Petitioner to federal habeas relief.

In order to understand these alleged constitutional errors, the Court must first

review the procedural history and the trial testimony relevant to those claims.[1]

The Pulaski County prosecutor charged Petitioner, by felony information, with raping his daughter, TW, who was less than fourteen years old at the time of the alleged crime.  (R 5, 36.)

On the morning of the scheduled bench trial, Tuesday, September 23, 2003, Petitioner's counsel moved for a continuance due to the unavailability of two witnesses, Kendra Duran (Petitioner's stepdaughter) and Penny White.[2]   The prosecutor objected because: (1) the trial had already been continued once; (2) defense counsel had advised him the prior week that no continuance would be sought; and (3) the state had incurred the expense of flying in its two main witnesses for trial.  (R. 24-25.)

Defense counsel told the court that Petitioner had only informed him about the two witnesses on the previous Friday afternoon.  He tried to subpoena the witnesses

---

[1]At this Court's direction, the record was expanded to include the record and appellate briefs from Petitioner's direct appeal in state court, including the trial transcript. (Docket entries #20, #22.)  All references to the state court record can be found in docket entry #22-1.

[2]According to defense counsel, Ms. Duran was to testify about a conversation in which TW said she had falsely accused Petitioner of raping her.  Ms. White was to testify about TW's "propensity to not tell the truth" and her history of making similar allegations against other individuals. (R. 22-23.)

on Monday but learned they would be unavailable for trial.[3]  (R. 25-33.)  The trial

court denied the continuance, finding that Petitioner's motion was "for delay only."

(R. 33-35.)

During the bench trial, the state called three witnesses: (1) TW's mother, Karen

Aaserud; (2) TW; and (3) Special Agent Paulette Ward, the investigator who took a

statement from Petitioner on December 11, 2002.

Ms. Aaserud testified that, in April 2002, she and TW were living in New York.

She allowed TW to travel from New York to Arkansas to live with Petitioner.

Apparently, Ms. Aaserud and Petitioner had known each other years earlier, but had

never married.  In 1994, when TW was two years old, Ms. Aaserud testified that

Petitioner adopted TW.[4]  (R. 36, 39-40.)

According to Ms. Aaserud, when TW returned to New York, in August 2002,

she was "very rebelled [sic], angry and very distant" and soon told her that Petitioner

"had touched her in her private areas."  Ms. Aaserud took TW to the emergency room.

(R. 37-39.)  For unknown reasons, no medical report from that examination was

---

[3]In contrast, Petitioner told the court he had given a list of these witnesses to his
attorney prior to the first trial setting, in June of 2003, and had later tried unsuccessfully,
on numerous occasions, to talk to his attorney by telephone.  (R. 31-32.)

[4]TW testified that Petitioner was not her biological father but had adopted her.  (R.
57.)  Petitioner testified that he was TW's "legal father," because he believed she was his
biological child, had agreed to paternity, and had his name put on her birth certificate.  (R.
112.)

submitted in the state court proceedings.  According to Petitioner, the results of the

examination were "inconclusive."  (Docket entry #3, at 9.)

On cross examination, Ms. Aaserud was asked if TW had levied "allegations"

against certain other named individuals.[5]  Ms Aaserud denied having any knowledge

_____

[5]Because the trial court did not conduct a rape-shield hearing, it ruled that defense counsel could *not* ask Ms. Aaserud about any allegations concerning prior *sexual* behavior by TW.  Defense counsel said he would be very careful to ask Ms. Aaserud only if TW had previously made "any allegations" against other individuals, without getting into whether they were "sexual in nature."  (R. 40-46.)  Thus, Petitioner's attorney only asked Ms. Aaserud the following "general" questions:

- whether TW had levied "allegations" against Carl Aaserud, Randy Pickard, William Blake, Shannon Boles, or Francis Morgan (R. 40, 54-55);
- whether there were allegations that TW had been in a pornographic movie (R. 49);
- whether TW alleged in a DHS interview that Ms. Aaserud and her boyfriend used drugs and drank "bleach water" (R. 50);
- whether there were allegations that "Tim" had bound TW with duct tape (R. 51);
- whether there were allegations of a video "of [TW] and Taylor kissing" (R. 51); and
- whether there was a DHS report where TW alleged she had been "molested" by a 13-year-old named Steven (R. 52).

In cross-examining TW, defense counsel asked similarly "general" questions about:

- whether she knew Mr. Pickard, Mr. Blake, Mr. Boles, Mr. Aaserud, and Mr. Morgan, and whether she had "accused" them of "doing anything" (R. 66-67);
- whether she made the statements in the DHS interview about her mother drinking bleach water (R. 72-73);
- whether she had accused "a 13-year old by the name of Steven" of "molesting" her (R. 73);
- whether she had accused "Tim" of "making a video" of her and "Taylor" (R. 74); and

of those allegations.  (R. 40, 44-45, 48-49, 51-52, 54-55.)  She also was asked if she had ever known TW to lie.  She replied that "every kid tells a lie I would assume." (R. 47.)  Finally, Ms. Aasured denied that she had ever "coached" her *older daughter* (not TW) to say that her father had also molested her.  (R. 49-50.)

TW testified that, on two occasions while she was living with Petitioner, in the summer of 2002, he "put his two fingers inside me and started rubbing."  (R. 59-60.) She testified that he slept on the floor of her bedroom, and she once awoke when he touched her "private part" with his fingers, then tried to put his "private part" inside her "private part."  (R. 60-63, 69.)  She also testified to a second nighttime incident, during which she awoke while Petitioner was rubbing her private part with "his two fingers like he did the last time," and he also rubbed his private part on her stomach. (R. 63-65.)  When she was asked if he had ever "tried to do anything else with his private part" or beat her up, she said no. (R. 64-65, 69, 77.)  She said she was "too scared" to tell anyone about what had happened at first, but finally told her mother when she returned to New York.  (R. 65-66, 69-70.)

On cross examination, she testified that she had never accused anyone else of "doing anything" to her or molesting her.  (R. 66-67, 73.)  She denied making the

---

•       whether she told anyone that Tim "tied [her] up with duct tape (R. 75).

Because this was a bench trial, the trial judge *undoubtedly knew* that the unspecified "general" allegations involved TW's alleged prior sexual behavior.

alleged statements during the DHS interview, or accusing anyone of making a video of her or tying her up with duct tape.  (R. 72-74.)  She also said she had never told anyone that nothing had happened with Petitioner or that she had made up the allegations against him.  She specifically denied telling Ms. Duran that she had made up the accusations.  (R. 76-77.)

Investigator Ward testified that, on December 11, 2002, Petitioner came to Arkansas State Police headquarters, signed a written form waiving his *Miranda* rights, and then gave a statement that amounted to a confession.  (R. 79-83.)  Both a tape recording and a transcript of the statement were entered into evidence, without objection.  (R. 84-94.)  In the statement, Petitioner said he "touched [TW's] vaginal area" and penetrated it "with [his] finger" on four occasions while she was sleeping. He said that, on three of the occasions, he stopped touching her because she jerked or moved and he thought she might be awake and, the fourth time, because he heard a noise outside the room.  He also stated that TW once performed oral sex on him while he held his hand against her head.

The defense presented two witnesses:  (1) Clayton Holliday, who was Petitioner's roommate while TW was living with them; and (2) Petitioner.

Mr. Holliday testified that he never saw anything "out of the way."  (R. 106.) He said that, before TW returned to New York, she told a babysitter "something

about" the incidents with Petitioner, prompting Mr. Holliday and others to talk with her about the allegations.[6]  According to Mr. Holliday, TW denied that Petitioner had done anything to her and said she had made up the allegations because she "was just mad at her dad."  (R. 106-11.)

In his testimony, Petitioner denied molesting TW.  (R. 112, 116-17.)  He said that, before he gave his December 2002 statement to Ms. Ward, he was given a polygraph test.  He said the investigator told him he had failed the polygraph test and had two options: "You can go to jail, or you can give me a statement."  He testified that he fabricated the statement because the investigator told him he would get probation if he confessed and because he did not want to put his daughter through a trial.  (R. 112-15.)  He testified that TW had "recanted a couple of times."  (R. 121.)  He also said that, shortly before his December 2002 arrest, TW told him she "was sorry she made these accusations" and was looking forward to seeing him over the Christmas holiday.  (R. 121-23.)

In a motion for dismissal, at the close of the state's case, and, in his closing argument, defense counsel focused on the discrepancies in the testimony of the witnesses.  He pointed out that TW's testimony regarding the nature and number of

---

[6]According to Mr. Holliday, he, his wife, his son, the babysitter ("a girl named Tonya"), and two of the babysitter's friends all talked to TW about the incidents with Petitioner.  (R. 106-08.)

instances of sexual contact was inconsistent with the details in Petitioner's purported confession. (R. 100-03, 129-30.)

The trial court convicted Petitioner of rape. (R. 130.) On October 14, 2003, after a sentencing hearing, Petitioner was sentenced to 240 months of imprisonment. (R. 18-19, 146-53.)

In his direct appeal to the Arkansas Court of Appeals, Petitioner argued that: (1) the trial court erred in denying his motion for continuance; and (2) the trial court lacked sufficient evidence to convict him. The Court affirmed Petitioner's conviction. *White v. State*, No. CACR 03-1294, 2004 WL 2102000 (Ark. Ct. App. Sept. 22, 2004) (unpublished) (Resp't Ex. 1).[7]

On December 13, 2004, Petitioner filed a Rule 37 petition with the trial court alleging that his trial counsel was ineffective for: (1) making false statements to the court concerning when he received a witness list from Petitioner; (2) failing to appear at a scheduled omnibus hearing; (3) meeting with Petitioner only twice before trial; (4) failing to respond to phone calls from Petitioner and from potential defense witnesses; (5) telling the prosecutor he was ready for trial when he knew material witnesses were unable to attend; (6) withdrawing a motion to suppress Petitioner's

---

[7]Unless otherwise indicated, Respondent's exhibits are attached to docket entry #15.

confession; (7) failing to know the relevant laws and statutes, including the rape-shield statute; and (8) failing to present evidence to rebut testimony of the victim and her mother or to show inconsistencies in the state's case.  (Resp't Ex. 2.)  The trial court denied relief.  *State v. White*, No. CR 2003-359 (Pulaski Co. Cir. Ct. April 12, 2005) (Resp't Ex. 3).

Petitioner appealed and, on May 11, 2006, the Arkansas Supreme Court affirmed the trial court's denial of Rule 37 relief.  *White v. State*, No. CR 05-836, 2006 WL 1285114 (Ark. Sup. Ct. May 11, 2006) (unpublished) (Resp't Ex. 4).

On March 24, 2009, Petitioner filed a state petition for writ of habeas corpus in Chicot County Circuit Court.[8]  In his petition, he alleged that: (1) TW had made inconsistent statements after his conviction that showed her trial testimony was perjured, including: (a) alleged testimony from a 2007 New York family court proceeding, (b) an alleged statement to her paternal aunt, Suzanne Smith ("Aunt Suzanne"), that she wanted to recant, and (c) TW's alleged school records from New York;[9] (2) his defense attorney failed to challenge certain testimony from TW; (3) two

---

[8]*See* Ark. Code Ann. § 16-112-101, *et seq.*

[9]It does not appear that any of this alleged "new evidence," *i.e.*, transcribed testimony from the New York family court proceeding, TW's alleged statement to Aunt Suzanne, and TW's New York school records, was ever made a part of the state court record in either the Chicot County or Pulaski County habeas proceedings.  Likewise, Petitioner has never provided this Court with any of this alleged "new evidence."  In fact, nothing supports the existence of this alleged "new evidence" other than Petitioner's bare

other state witnesses (Ms. Aaserud and Investigator Ward) gave perjured testimony; and (4) his confession was "invalid."  (Resp't Ex. 5.)  The Chicot County Circuit Court denied relief on the ground that the claims raised were not cognizable in state habeas corpus proceedings.  *White v. Norris*, No. CV-2009-48-3 (Chicot Co. Cir. Ct. March 31, 2009) (Resp't Ex. 6).

Petitioner appealed to the Arkansas Supreme Court.  He later filed a motion seeking to include as a "supplemental addendum" a letter from Francis Morgan, dated October 2003, which allegedly stated that TW had told him she made up the allegations against Petitioner.[10]  On September 24, 2009, the Court denied Petitioner's motion and affirmed the denial of state habeas relief.  *White v. Norris*, 2009 Ark. 446, 2009 WL 3047596 (unpublished).[11]

---

allegations.

[10]Mr. Morgan was Ms. Aaserud's boyfriend and was living with her when TW returned to New York in August 2002, after spending the summer living with Petitioner in Arkansas.  (Docket entry #3, at 2; *see* R. 40, 55, 66.)

[11]The Arkansas Supreme Court's decision makes it clear that Petitioner did *not* make Mr. Morgan's alleged letter a part of the record, by referring only to Petitioner's *allegations* of inconsistent post-conviction statements by TW and other witnesses.  Out of an abundance of caution, this Court obtained, from the Arkansas Supreme Court, a copy of Petitioner's motion seeking to file a "supplemental addendum," and a copy of the Arkansas Supreme Court's docket sheet in his appeal.  Copies of those documents, marked Court's Ex. A and B, are attached to this Recommended Disposition.  Those documents confirm that Petitioner did *not* make the alleged letter part of the record in either his habeas proceedings in Chicot County or in his appeal to the Arkansas Supreme Court.  Likewise, he has never submitted a copy of the alleged letter to this Court.

On October 21, 2009, Petitioner filed a "Motion to Vacate and Set Aside Judgment Based on New Evidence" in Pulaski County Circuit Court.[12]  (Resp't Ex. 9.)  He alleged that *newly obtained evidence* "clearly establishe[d]" his innocence. Yet, he once again failed to attach any of this new evidence to his pleading.  Instead, his sole support for the existence of this new evidence again consisted of his bare allegations, which described this new evidence as follows: (1) testimony from the 2007 New York family court proceeding involving TW; (2) TW's school records from New York; and (3) the October 2003 letter from Francis Morgan stating that TW had told him she made up the allegations against Petitioner.  The trial court denied the motion on the ground that Petitioner's "alleged new documentary evidence" did "not qualify as scientific evidence and [was] not a proper basis for granting relief" pursuant to § 16-112-201.  *State v. White*, No. CR 2003-359 (Pulaski Co. Cir. Ct. Feb. 19, 2010) (Resp't Ex. 10).

On November 4, 2010, the Arkansas Supreme Court affirmed the trial court's ruling and dismissed the appeal.  *White v. State*, 2010 Ark. 429, 2010 WL 4367137 (unpublished).

―――――――――――――

[12]Petitioner improperly denominated his filing as a "Motion to Vacate and Set Aside Judgment Based on New Evidence."  He should have described his initial pleading as a petition for writ of habeas corpus and requested that his conviction be vacated and set aside, based on new scientific evidence.  *See* Ark. Code Ann. §§ 16-112-201 to -208.

## II. ANALYSIS

For the reasons explained below, the Court concludes that: (1) Petitioner's "actual innocence" claim, based on "newly discovered evidence" of "perjured" testimony, does not, as a matter of law, entitle him to federal habeas relief; and (2) his ineffective assistance of counsel claim and his coerced confession claim are time-barred.[13]

A.   **Plaintiff's "Actual Innocence" Claim Based on "Newly Discovered" Evidence Establishing That His Conviction Was Based on "Perjured Testimony."**

According to Petitioner, in October 2003, after his bench trial but before his sentencing, Francis Morgan sent a three-page letter to the trial judge stating that TW had previously confessed to him, in front of other witnesses, that she had made up the allegations against Petitioner. The letter also allegedly stated that TW's mother had threatened Mr. Morgan by saying he could "end up in the same legal trouble" as Petitioner.[14] Petitioner alleges that he only learned of Mr. Morgan's letter in March

---

[13]The Court need not address Respondent's procedural default argument. *See Trussell v. Bowersox*, 447 F.3d 588, 590-91 (8th Cir. 2006) (because procedural default is not a jurisdictional bar to federal habeas review, it can be bypassed "in the interest of judicial economy").

[14]As indicated earlier, Mr. Morgan was Ms. Aasured's boyfriend in August 2002, when TW returned to New York from Arkansas.

2009 and tried to submit it in his state habeas proceedings.[15]  (Docket entries #2, at 6, 14-15; #3, at 2, 10-11; #17, at 2.)

Next, Petitioner alleges that, in May 2004, TW told Aunt Suzanne that "she was sorry and wanted to recant but was told by others not named that she would ... 'get into big trouble if she did so she couldn't.'"  (Docket entry #3, at 10.)  Petitioner has *not* submitted an affidavit from his sister to support this alleged hearing recantation testimony from TW.

Petitioner also alleges that, in 2007, TW was involved in a family court proceeding in Cayuga County, New York, to terminate Petitioner's parental rights. He alleges that, during that proceeding, TW gave a "brand new version" of what happened between Petitioner and her in the summer of 2002, *i.e.*, claiming that he forcibly and repeatedly raped her by intercourse, forced her to watch pornographic movies, severely beat her with a crowbar, handcuffed her to the bed, and drugged her pets.  Petitioner asserts that, during the family court proceeding, TW's account was related secondhand, through the testimony of her "law guardian."  (Docket entries #2, at 6, 14; #3, at 2, 7-8.)  He has *not* submitted a transcript of this double hearsay

---

[15]As made clear in footnote 11, Petitioner has never provided this Court with a copy of Mr. Morgan's alleged letter or made it a part of the record in any of his state habeas proceedings.

testimony or provided any other evidence to support this allegation.[16]

Finally, Petitioner contends that, after his conviction, he obtained records from the school TW attended in New York.  According to Petitioner, these records show that TW had "severe behavioral problems" before she came to live with him and was a "deeply troubled student who was clearly distant, rebellious and out of control long before her visit [to Arkansas]."  Petitioner alleges that the school records create an inference of perjury because both TW and her mother testified that TW had no behavior problems before coming to stay with Petitioner.[17]  While he alleges that these

---

[16]It is unclear how Petitioner obtained a copy of this alleged testimony.  In his habeas Petition, he asserts this new evidence was "not even available until 2007."  (Docket entry #2, at 15.)  In his October 2009 Pulaski County habeas papers, he asserted that "the transcripts" were "made available" to him in early 2009.  (Resp't Ex. 9, at 4.)  To date, Petitioner has not favored the Court with a copy of this alleged transcript.

[17]These school records clearly do *not* establish that TW or her mother committed perjury.  In fact, they do not necessarily even contradict their trial testimony.  Ms. Aasured admitted that she "had trouble with [TW], *but not like this*."  (R. 47-48 (emphasis added).)  When asked if she had ever had problems at school, TW testified, "No, *not really*."  (R. 76 (emphasis added).)  Additionally, in his own testimony, Petitioner admitted that:

> [TW] came down here as an unruly child.  I was trying to do my best to try and straighten her up.  She had given her mother anxiety attacks, and, in fact, that – I was even called by DHS to say that if I did not take her in April that she was going to a foster home because she could not be controlled.

(R. 116.)  Thus, the alleged content of these school records (as described and supported solely by Petitioner's own allegations in his habeas papers) fall far short of establishing perjury by either TW or her mother.

records were "readily available," he did *not* make them part of the record in any of the state court proceedings or in this case, or explain how and when he obtained them. (Docket entries #2, at 7, 14; #3, at 2, 11-12.)

Petitioner argues that this so-called newly discovered evidence "proves" that he is "actually innocent" because his conviction was procured by perjured testimony by TW, her mother, and Investigator Ward.[18]  He cites *Napue v. Illinois*, 360 U.S. 264 (1959), and similar cases for the proposition that a conviction must be set aside if it is obtained by the *knowing use* of perjured testimony.

To demonstrate a due process violation under the *Napue* standard, a defendant must establish that: (1) the prosecution used perjured testimony; (2) the prosecution actually knew or should have known of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the verdict.  *United States v. West*, 612 F.3d 993, 996 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 1028 (2011).  Mere inconsistent statements do not establish use of false testimony, and it is not improper

---

[18]Petitioner's actual innocence claim is predicated entirely on so-called "inconsistent statements" by witnesses that allegedly rise to the level of "perjured testimony." Thus, it does not constitute a true "free-standing" actual innocence claim. However, even if the Court were to construe it as asserting such a claim, it would fail under *Herrera v. Collins*, 506 U.S. 390, 400 (1993), and its progeny.  *See Whitby v. Dormire*, 2 F. App'x 645, *1 (8th Cir. 2001) (unpub. table op.) (a non-capital habeas petitioner "presented the District Court with a free-standing claim of actual innocence based on newly discovered evidence," and the Court "correctly ruled that such a claim is not cognizable in a federal habeas proceeding,"*citing Herrera* and *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996)).

to put on a witness whose testimony may be impeached.  *Id.*  Similarly, a challenge to a witness's testimony through another witness or prior inconsistent statements is insufficient to establish prosecutorial use of false testimony.  *United States v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995).  Finally, there is no due process violation where the witness told different stories and defense counsel knew as much as the prosecution. *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007).

Neither Petitioner's pleadings nor anything in the record suggests that the prosecutors in his case *actually knew or should have known* that any witnesses were presenting perjured testimony.[19]  There is no allegation – much less any evidence – that TW or any other witness informed the prosecution that they would testify untruthfully, or that the prosecution withheld or failed to disclose evidence bearing on any witness's credibility.  At most, the trial transcript shows that, *both the prosecution and defense knew*, that there were inconsistencies and weaknesses in the evidence and that the veracity of the state's witnesses would be a critical issue at trial.  The alleged inconsistencies that came to light *after* trial certainly cannot support an inference that the prosecutors knew or should have known that any witness would testify falsely *during* the trial.

---

[19]In his pleadings, Petitioner admits that the testimony in question is "now known not to be true" due to the discovery of new evidence, and that the "falsity of the testimony was not discovered until after conviction."  (*See* docket entries #3, at 7-14, 18; #17, at 3-4, 6-7.)

Furthermore, the evidence that Petitioner cites does not "prove" that any testimony was perjured. His post-trial discovery of alleged inconsistent statements by TW does not establish that she testified falsely at trial. Her detailed testimony at trial was corroborated by her mother's testimony and by Petitioner's own confession to digitally penetrating TW on four occasions while she slept.[20]

Additionally, Petitioner's attorney directly challenged TW's credibility on cross-examination. He asked both TW and her mother about the DHS investigation and statements made by TW during the interview, including claims that TW's mother drank "bleach water" and used drugs. Petitioner's counsel also attacked TW's and her mother's credibility by asking them questions about: whether there had been allegations that TW had been in a pornographic movie or had been bound with duct tape; whether TW had made accusations against seven other individuals; whether TW's mother coached her older daughter to accuse her father of molestation; and whether TW's mother had made any similar accusations against her own father. Thus, it was up to the trial judge, as the finder of fact, to sort out the inconsistences in the

---

[20]TW's testimony apparently was also consistent with the report she gave police in New York, alleging two instances of digital penetration. (*See* docket entry #3, at 8; Resp't Ex. 7, at 1.) The police report was not introduced at trial, and it was not made a part of the record in this case.

testimony of the witnesses and decide who to believe.[21]

Finally, to the extent that Petitioner is arguing that his conviction was based on perjured testimony, *which was unknown to the prosecution at the time of trial*, but which has come to light through newly discovered evidence, a different legal standard must be applied. This standard has five requirements:

> (1) [T]he [new] evidence must have been discovered after the trial; (2) the failure to discover the evidence must not be attributable to a lack of diligence on the part of the petitioner; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be likely to produce an acquittal if a new trial is granted.

*United States v. Duke*, 50 F.3d 571, 576-77 (8th Cir. 1995); *see Evenstad v. Carlson*, 470 F.3d 777, 783-84 & n.6 (8th Cir. 2006) (§ 2254 action citing *Duke* as the applicable Eighth Circuit standard for due process claims that conviction was based on perjured testimony which was unknown to the prosecution at time of trial). Although Petitioner does not cite *Duke*, his Petition specifically addresses the five factors set forth in that decision. (Docket entry #2, at 15.)

First, Petitioner's suggestion that the trial transcript reveals that Investigator

---

[21]Significantly, there has been no court finding of perjury, and none of the evidence Petitioner references is a firsthand recantation by TW. Instead, Petitioner alleges (without documentation) that TW told third parties that she had made up the accusations against him. He further alleges (again without documentation) that, through the testimony of a third party, TW levied significantly *worse* sexual abuse allegations against him in a family court proceeding four years after his trial.

Ward committed perjury is simply absurd.  At most, Petitioner points out inconsistent testimony by Ms. Ward: first, that she was "not sure" if Petitioner had come into police headquarters, nine days before he gave a statement to her, and given a statement to Investigator Matt Caten (R. 94-95); and, later, that she was "aware of the [criminal] investigation that Investigator Caten had given [her]" (R. 98).  Furthermore, because this claim of perjury is based on Ms. Ward's alleged testimony, *during the trial*, it clearly fails to meet the first *Duke* requirement.

Second, while Petitioner did not obtain TW's alleged school records from New York until after trial, he *admits* that they have always been  "readily available."  This means he could have obtained them before trial.  Thus, those alleged records fail to meet the second *Duke* requirement.

Petitioner can satisfy the first two *Duke* requirements in connection with Mr. Morgan's alleged October 2003 letter, TW's alleged 2004 statement to Aunt Suzanne, and the alleged 2007 family court testimony, because none of that so-called new evidence existed at the time of Petitioner's trial.  However, even if the Court were to give credence to Petitioner's allegations about the substantive content of this new evidence (none of which has been made a part of the record in this case), it all goes *only* to the credibility of TW's trial testimony and, as such, is merely cumulative of other evidence presented at trial.

Finally, if this so-called "new" evidence does exist and is as represented by Petitioner, it certainly would *not* be *likely* to produce an acquittal at a new trial. Indeed, to the extent that the New York family court proceeding contains an account by TW of Petitioner committing even more extreme sexual abuse than the incidents described at trial, this so-called "new evidence" could well work to Petitioner's detriment, rather than to his advantage.

      **B.**    **Petitioner's Ineffective Assistance of Counsel and Involuntary Confession Claims Are Time-Barred.**

      **1.**    **Calculation of Limitations Period.**

A state prisoner seeking to challenge his state court conviction in federal court generally must file a petition for federal habeas relief within one year after the state judgment of conviction becomes final by conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). For a state prisoner who does not seek review in a state's highest court, the judgment becomes "final" on the date that the time for seeking such review expires. *Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012).

On September 22, 2004, the Arkansas Court of Appeals denied Petitioner's direct appeal. (Resp't Ex. 1.) Because he did not seek review from the Arkansas

Supreme Court, his conviction became "final" on October 12, 2004.[22]   Section

2244(d)'s statute of limitations began running on that date.  *See Johnson v. Hobbs*,

No. 11-1744, 2012 WL 1499916, at *2 & n.3 (8th Cir. May 1, 2012); *King v. Hobbs*,

666 F.3d 1132, 1136 & n.3 (8th Cir. 2012).

The one-year limitations period is tolled while a "properly filed" application for

post-conviction relief is pending in state court.   28 U.S.C. § 2244(d)(2).[23]   The

statutory tolling period begins when a petition for post-conviction relief is filed in the

trial court and runs, in one continuous block of time, until the highest state appellate

court enters a decision on appeal.  *Carey v. Saffold*, 536 U.S. 214, 219-21 (2002).

There is no contention that Petitioner's December 13, 2004 Rule 37 petition

was not a properly filed application for state post-conviction relief.   Thus, the

limitations period was tolled from that date through May 11, 2006, the date the

Arkansas Supreme Court affirmed the trial court's decision denying Rule 37 relief.

(*See* Resp't Ex. 2, 4.)

---

[22]From the date of the Arkansas Court of Appeals' decision, Petitioner had eighteen days to file a petition for review with the Arkansas Supreme Court.  Ark. Sup. Ct. R. 2-4(a).  Because October 10, 2004 fell on a Sunday, his deadline was Monday, October 11, 2004.  Ark. R. App. P.-Crim. R. 17.  *See Johnson*, *infra* at *2 n.3.

[23]The limitations period is *not* tolled in the interval between the conclusion of direct review and the filing of a state post-conviction petition.  *McMullan v. Roper*, 599 F.3d 849, 852 (8th Cir.), *cert. denied*, 131 S. Ct. 602 (2010).

On May 12, 2006, the statute of limitations resumed running.  *See King*, 666 F.3d at 1136.

Thus, the one-year limitations period is calculated as follows:

October 12, 2004          § 2244(d) statute of limitations begins running

-     **Statute of limitations runs for 62 days**

December 13, 2004          Petitioner files Rule 37

-     **Limitations period tolled**

May 11, 2006               Arkansas Supreme Court affirms Rule 37 denial

May 12, 2006               Statute of limitations resumes running

-     **Statute of limitations runs for 303 days**

March 10, 2007    365th day (Saturday)[24]

March 12, 2007    **Deadline for Petitioner to file federal § 2254 petition raising his ineffective assistance of counsel and involuntary confession claims**

Petitioner filed this federal habeas action on December 13, 2010[25] well over

---

[24]*See* Fed. R. Civ. P. 6(a)(1) (a deadline continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday).

[25]Petitioner dated his Petition December 12, *2009*, and certified that he placed it in the mail on December 13, *2009*.  (Docket entry #2, at 16-17.)  However, the notary public's attestation of his signature is dated December 12, *2010*, and the Clerk of the Court received and file-stamped the Petition on December 15, *2010*.  (*Id.* at 1, 18.)  With that correction, Petitioner's habeas Petition is deemed to have been "filed" on December 13, 2010.  *See* Rule 3(d), Rules Governing § 2254 Cases in United States District Courts; *Ford v. Bowersox*, 178 F.3d 522, 523 (8th Cir. 1999) (pro se prisoner's habeas petition is

three years *after* the expiration of the statute of limitations.

Neither of Petitioner's 2009 state habeas petitions in Chicot and Pulaski Counties had any effect on the calculation of the applicable limitations period because both were filed long after the filing deadline. The statute of limitations for a federal habeas action cannot be tolled after it has expired. *Jackson v. Ault*, 452 F.3d 734, 735-36 (8th Cir. 2006).

Section 2244(d)(1)(D) contains three narrowly defined provisions that may allow the limitations period for timely filing a federal habeas petition to be extended beyond the date the state judgment becomes final. *Earl v. Fabian*, 556 F.3d 717, 725 (8th Cir. 2009). One such provision applies to relevant newly uncovered evidence supporting a claim that "could [not] have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).[26] Importantly, this provision "does not convey a statutory right to an extended delay ... while a habeas petitioner gathers every possible scrap of evidence that might ... support his claim." *Earl*, 556 F.3d at 725-26 (quoting *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)). Rather, as long

deemed "filed" on date he delivered it to prison authorities for mailing to the Court).

[26]Two other provisions for a delayed starting date are: the existence of a state-created impediment to seeking federal habeas relief, 28 U.S.C. § 2244(d)(1)(B); and a United States Supreme Court case announcing a newly recognized, retroactively applicable constitutional right, *id.* § 2244(d)(1)(C). Neither of those provisions is applicable in this case.

as the petitioner is in possession of the "vital facts" underlying his claims, he must file them within the one-year limitations period and has no basis for arguing that the limitations period should begin to run some date beyond the date the state judgment becomes final. *Id.* at 725.

In this case, Petitioner clearly possessed all of the vital facts necessary to assert his federal habeas claims for ineffective assistance of counsel and the admission of his allegedly involuntary confession *before* March 12, 2007, the deadline for timely filing this federal habeas action.

In his Rule 37 petition, filed in 2004, Petitioner specifically argued that he received ineffective assistance from his trial counsel, who allegedly made false statements to the trial court concerning when he received a witness list from Petitioner, and failed to respond to phone calls from Petitioner and potential witnesses. (*See* Resp't Ex. 2, at 3-5; Resp't Ex. 4, at 2-3.)

In his federal habeas papers, Petitioner now alleges that newly acquired telephone records will show that he and others contacted his attorney multiple times prior to trial and left messages, which were not returned. (Docket entries #2, at 15; #3, at 5; #17, at 2.) Petitioner has *not* submitted any telephone records to this Court, nor does he say when he obtained them. Moreover, he does not explain why he could not have obtained and presented the records in 2004, when he filed his Rule 37

petition.   Clearly, through the exercise of due diligence, Petitioner should have discovered and used those documents (if they indeed exist) to support a *timely* ineffective-assistance claim in federal court.

In the same vein, Petitioner also argues that the one-year limitations period should be extended because, after his conviction became final, he allegedly discovered: TW's New York school records establishing her "behavior problems"; Aunt Suzanne's alleged conversation with TW, in 2004, in which TW recanted her rape allegations; Mr. Morgan's 2003 letter in which he states TW told him she had made up the rape allegations against Petitioner; and the newly discovered family court testimony from New York.   Apart from the manifest problems arising from Petitioner's having *never produced* a copy of any of this allegedly "new evidence" to either this Court or any state court, none of it has any bearing on Petitioner's ability to have asserted timely federal habeas claims for ineffective assistance of counsel and the prosecution's alleged use of a coerced confession.   Thus, Petitioner has failed to establish that he is entitled to an extension of the one-year limitations period under § 2244(d)(1)(D).

## 2. **Equitable Tolling.**

The United States Supreme Court has held that § 2244(d) is a statute of limitations, not a jurisdictional bar.  *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010).

Thus, it may be subject to equitable tolling in appropriate cases. *Id.* A habeas petitioner is entitled to equitable tolling only if he shows that: (1) he has been "pursuing his rights diligently"; but (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 2562.

Petitioner alleges that he can overcome Respondent's untimeliness argument by demonstrating "a fundamental miscarriage of justice," based on new evidence that establishes his innocence. The Court has liberally construed this allegation as presenting an equitable tolling argument.

According to Petitioner, he has worked diligently to obtain this new evidence and present it to the state courts. As proof of his diligence, he points out that he initiated this federal habeas action about one month after the Arkansas Supreme Court dismissed the appeal of his second state habeas petition. (Docket entries #2, at 14-15; #17, at 1, 7.) These self-serving assertions do not entitle Petitioner to equitable tolling of the federal limitations period.

First, as already discussed at length, Petitioner has in no way been diligent in obtaining the so-called "new evidence" that he believes should warrant equitable tolling.

Second, the fact that Petitioner was pursuing collateral relief in state court does not excuse him from taking steps to preserve and timely pursue his federal habeas

claims for ineffective assistance of counsel and the prosecution's use of an allegedly coerced confession. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (prisoner seeking state post-conviction relief can file a "protective" federal habeas petition and ask federal court to stay the habeas action until conclusion of state proceedings); *Runyan v. Burt*, 521 F.3d 942, 945-46 & n.4 (8th Cir. 2008) (no equitable tolling where petitioner's post-conviction applications were not properly filed and thus did not toll the statute of limitations, and he "could have protected himself" during their pendency by filing a timely federal habeas petition and seeking "stay and abeyance"); *Walker v. Norris*, 436 F.3d 1026, 1030-31 (8th Cir. 2006). Regardless of his ongoing state court proceedings, nothing prevented Petitioner from protectively filing a timely federal habeas petition raising his ineffective-assistance and coerced-confession claims.

Finally, Petitioner has not alleged, much less demonstrated, that some extraordinary circumstance prevented him from timely filing this federal habeas action. *See Nelson v. Norris*, 618 F.3d 886, 893 (8th Cir. 2010). Where a habeas petitioner has encountered "the kinds of obstacles faced by many if not most habeas petitioners," equitable tolling is inapplicable because Congress is presumed to have considered such equities in determining that one year represents a fair and appropriate limitations period. *Runyan*, 521 F.3d at 945-46.

Moreover, Petitioner's assertion of his innocence does not constitute an "extraordinary circumstance" that prevented him from filing a timely habeas action. In *Flanders v. Graves*, 299 F.3d 974 (8th Cir. 2002), the Eighth Circuit Court of Appeals rejected, "as a broad concept," the contention that actual innocence could be used to excuse a habeas petitioner's failure to file his petition within the statutory limitations period. *Id.* at 977 ("It is not our place to engraft an additional judge-made exception onto congressional language that is clear on its face."). Petitioner has not established the existence of any action or inaction by any state actor that prevented him, in the exercise of reasonable diligence, from discovering the relevant facts in time to file a federal habeas petition within the statutory limitations period asserting his ineffective-assistance and coerced-confession claims. Absent such obstructive state action, an actual-innocence claim simply cannot entitle a petitioner to equitable tolling. *Id.* at 978.

Finally, a habeas petitioner asserting actual innocence as a "gateway" to consideration of otherwise barred claims must "establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This requires a habeas petitioner to come forward with new *reliable evidence* which was not available at trial through

-30-

the exercise of due diligence. *Kidd v. Norman*, 651 F.3d 947, 951-53 (8th Cir. 2011).

A federal habeas court must then consider "all the evidence, old and new,

incriminating and exculpatory," and make a "probabilistic determination about what

reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538. This is a

"demanding" standard that permits review only in "extraordinary" cases. *Id.*

As previously explained, all of Petitioner's so-called "new evidence" consists

of *his allegations* about the content of documents that are *not* part of the record in this

case. On its face, such still unproduced "new evidence" is highly suspect and

certainly not reliable. Thus, it falls far short of the high and exacting evidentiary

standard established by the Supreme Court in *House* and its progeny.

Accordingly, Petitioner has failed to establish any basis for equitable tolling.


### III. CONCLUSION

IT IS THEREFORE RECOMMENDED THAT this 28 U.S.C. § 2254 Petition

for Writ of Habeas Corpus (docket entry #2) be DENIED and this case be

DISMISSED, WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that a Certificate of Appealability be

DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases

in United States District Courts.

DATED THIS 9th DAY OF May, 2012.

_____

UNITED STATES MAGISTRATE JUDGE

# 09-414

**FILED**

MAY 27 2009

**LESLIE W. STEEN
CLERK**

## IN THE SUPREME COURT STATE OF ARKANSAS

Lewis White                                    **PETITIONER**

VS.                          NO.**09-414**

Larry Norris, Director                   **RESPONDENT**
Arkansas Department of Correction

---

*Pro Se*
## MOTION FOR SUPPLEMENTAL ADDENDUM FOR
## REPLY BRIEF

Comes now the Petitioner *pro se,* in order to file a supplemental addendum in

support of his arguments contained in his original brief. These items can not be

obtained by the Petitioner with due dilligence in the time needed in order to file

with his brief that is now due on June 8, 2009. Rather than file for an extension of

time, Petitioner requests that these items be allowed to file these items with his

reply brief. These items and what they are intended for are the following:

1). The Original police report filed in The Auburn Police

Department dated approximately November11,2003. This will be used to prove

Court's Ex. A

that the victim has at least two (2) or possibly three (3) or more versions of the alleged events that occurred during the Summer of 2002.

2.) The Original Hospital Report Filed at Auburn Memorial Hospital- This was not introduced into evidence during the original trial but is a crucial piece of evidence refuting the versions given by the alleged victim. The results were mentioned in the trial transcript and Petitioner wishes to refer to this document that the medical finding are inconsistent with the alleged victims versions.

3). A letter written from a Mr. Francis Morgan to Judge Langston in approximately 2003-2004. Mr. Morgan writes to the judge that the victim herself in front of witnesses the the events were made up. That there was multiple conversations where the victim stated that she made up the accusations. He further alleges that Ms. Karen Aaserud threatened him that he could himself come under the same accusations. This is to be used to include another version claimed by the alleged victim.

**THEREFORE** for the above reasons stated herein, The Petitioner respectfully prays that this Honorable Court grant his requests and be allowed to add these documents to his reply brief in support of his appeal.

2

STATE OF ARKANSAS                    )
                                     )SS
COUNTY OF _____ _Chicot_            )

     SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public on this

_8 21_ day of ___MAY_____, 20_09_ .


                                                _Sgt MAtson_
                                                NOTARY PUBLIC

My Commission Expires: _3/15/2016_____


## CERTIFICATE OF SERVICE

     I, _Lewis J White____, Petitioner herein do certify that a

copy of the forgoing petition has been served on the Arkansas State Attorney

General 323 Center Street Little Rock, Arkansas 72201, on this __22__ day of

_May_____, 20_09_ .

                                        Lewis J. White

MICHAEL MASON
NOTARY PUBLIC
CHICOT COUNTY

4



**Docket Sheet**
Holli North  to: 'suzanne_sims@ared.uscourts.gov'                              05/08/2012 10:28 AM

Run Date: 05/08/12 at 10:30 AM                                              Page   1

Case Number    09-414        filed at this court on 04/21/2009
Case Category: Post Conviction

Case Caption:
    LEWIS JAMES WHITE
    V
    LARRY NORRIS, DIRECTOR


 Lewis James  White  (ACTIVE) Appellant's counsel:
                                 Lewis James  White - LEAD

 Larry  Norris, Director  (ACTIVE) Appellee's counsel:
                                 Attorney General   - LEAD


 Trial Court:                    Chicot
                                 Chicot Circuit
 Trial Court Number:             CV-09-48-3
 Trial Judge:                    Robert Bynum Gibson Jr.


             ------- EVENT LISTING --------

09/24/2009   Per Curiam Order
    Action = ADISMOMOOT on 09/24/09
    Appellant's Attorney - Lewis James White

09/24/2009   Formal Orders - Supreme Court
    Appellant's Attorney - Lewis James White

09/24/2009   Letter to Appellant

06/26/2009   Record Checkout by Staff
    Assign  - S Newbery
    Number of Volumes          0
    Number of Sets             0
    Transcript Cost            0.00

06/22/2009   Letter to Appellant
    Pro se motion filed.

06/22/2009   Pro Se Motion for Extension of Time - Lewis J
    Action = ADISMOMOOT on 09/24/09
    Appellant's Attorney - Lewis James White

06/16/2009   Brief Filed Timely - Larry  Norris, Director
    Appellee's Attorney -  Attorney General

06/12/2009   Record Checkout by Atty. of Record - Larry Norr  ,
    Appellee's Attorney -  Attorney General
    Number of Volumes         1

Court's Ex. B

```
          Number of Sets           0
          Transcript Cost          0.00

06/11/2009   Letter to Appellant
          Appellant's brief filed.  Appellant's new address noted.

06/11/2009   Briefing Commenced - Larry Norris, Director
          This event was tickled for 07/13/09


06/11/2009   Brief Filed Timely - Lewis James  White
          Appellant's Attorney - Lewis James White


06/01/2009   Letter to Appellant/Corrected brief due 6-15-09
          Appellant's brief tendered and returned for corrections.
          Corrected brief due 6-15-09.

05/27/2009   Letter to Appellant

05/27/2009   Pro se Motion to Supplemental Addendum for Re
          Action = ADISMOMOOT on 09/24/09
          Appellant's Attorney - Lewis James White

05/08/2009   Letter to Appellant\Brief due June 8, 2009
          Acknowleding request for for seven day extension to file
          brief.  Brief time has been extended to June 8, 2009.

04/21/2009   Letter to Appellant
          Appeal lodged in the Supreme Court.  Brief due Monday, June
          1, 2009.

04/21/2009   Record Lodged
          Number of Volumes        1
          Number of Sets           0
          Transcript Cost          0.00

04/21/2009   Briefing Commenced - Lewis James White
          This event was tickled for 06/01/09
          Appellant's Attorney - Lewis James White
```